IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VOTE!, et al.,

    *Plaintiffs*,

v.                                                         Case No. 6:25-cv-1980

CITY OF DAYTONA BEACH, et al.,

    *Defendants*.
_____/

**DEFENDANT CITY OF DAYTONA BEACH'S MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

## Introduction

Racial predominance in redistricting triggers strict scrutiny. Race consciousness doesn't. Race predominates only when it becomes the one criterion that displaces other race-neutral districting criteria such as compactness, contiguity, adherence to geographic and political boundaries, ignoring incumbency, and core preservation. Importantly, when assessing whether the consideration of race has gone too far, courts begin their analysis with the presumption that the municipality acted in good faith—that race did *not* predominate. The Supreme Court has said that this presumption of good faith applies at every stage of the proceedings, from the pleadings through trial.

In this case, Plaintiffs can't overcome the starting presumption of good faith and make a *plausible* case for racial predominance. Material properly considered at the pleading stage establishes that the City of Daytona Beach evaluated multiple redistricting alternatives. Each satisfied traditional, race-neutral redistricting criteria like compactness, contiguity, and core preservation. Ultimately, the City's decision resulted in the preservation of two majority-black districts; however, this result neither triggers strict scrutiny nor does it otherwise violate the equal protection clause.

Plaintiffs' contrary narrative rests on selective quotations from five sources. They isolate and magnify the City's limited references to race, while disregarding the extensive record of other factors guiding the redistricting process. Indeed, when this Court assesses the cited material in full, which it should do under the incorporation-by-reference doctrine, the complaint presents no plausible case.

This Court should dismiss under Federal Rule of Civil Procedure 12(b)(6).

## Background

Plaintiffs allege a single claim of racial gerrymandering, arising from the City's efforts to redistrict to comply with the one person, one vote doctrine. Doc.1 at ¶¶ 15-16, 92-97. Their factual allegations come from excerpts of the following: (1) a July 17, 2025, memorandum authored by Kurt Spitzer, the City's redistricting consultant, Doc.1 at ¶¶ 22-28; (2) statements from an August 6, 2025, workshop, Doc.1 at ¶¶ 29-55; (3) statements from an August 20, 2025, meeting, Doc.1 at ¶¶ 56-64; (4) statements from a September 3, 2025, meeting, Doc.1 at ¶¶ 65-73; and (5) statements from an October 1, 2025, meeting, Doc.1 at ¶¶ 74-78. Based on the excerpts, Plaintiffs allege that race predominated, strict scrutiny applies, and the City's preservation of two majority-black districts violates the Fourteenth Amendment's Equal Protection Clause. Doc.1 at ¶¶ 92-97. A review of the five sources of material makes clear that race was one of several criteria considered along with compactness, contiguity, adherence to geographic and political boundaries, and the use of a least-changes approach to redistricting that preserved the core of existing districts. *See infra.*

## Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of the complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions." *Id.* "Threadbare recitals," or "a formulaic recitation of the elements" of a cause of action fail to make a claim plausible. *Id.*

In addition, the incorporation-by-reference doctrine allows this Court to consider a document referenced in a complaint, without converting the motion into a summary judgment motion. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). A "document need not be physically attached to a pleading to be incorporated by reference into it." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). But the document must be: "(1) central to the plaintiff's claim[,] and (2) undisputed" as to its authenticity. *Horsley*, 304 F.3d at 1134; *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

## Argument

As an initial matter, the incorporation-by-reference doctrine applies here, and allows this Court to consider in full the five sources that Plaintiffs rely on in their complaint. When appropriately considered, it's apparent that race did not predominate in the City's redistricting decision. Plaintiffs' failure to make a plausible case for racial predominance requires dismissal of their case under Federal Rule of Civil Procedure 12(b)(6).

3

### A. The incorporation-by-reference doctrine applies.

The five sources at the heart of Plaintiffs' complaint are Mr. Spitzer's memorandum and the transcripts of four City Commission meetings and workshops. Though not attached, this Court can consider the material at the pleading stage.

First, the referenced "document[s'] contents are alleged in a complaint." *Day*, 400 F.3d at 1276. There can be no dispute about this from the face of the complaint.

Second, the documents' contents are "integral to the allegations" in the complaint, *Daewoo Motor Am. v. GMC*, 459 F.3d 1249, 1266 n.11 (11th Cir. 2006), *i.e.*, they are "a necessary part of [Plaintiffs'] effort to make out a claim," *Day*, 400 F.3d at 1276. This is so because Plaintiffs' attempt to establish racial predominance and a failure to satisfy strict scrutiny relies almost exclusively on excerpts from the five sources. *See generally* Doc.1 at ¶¶ 22-78.

Third, the authenticity of the documents isn't in dispute. *See Day*, 400 F.3d at 1276. That's because Plaintiffs themselves filed *all five* of the relevant documents with their motion for preliminary injunction in this case. *See generally* Doc.7 (PI motion).

In the end, consideration of the five documents is no different than this Court's consideration of the whole contract when a litigant relies only on excerpts to plead a breach of contract case. When viewed as a whole, it becomes apparent that race was one of several criteria the City considered when redistricting. Other criteria included compactness, contiguity, adherence to geographic and political boundaries, and core preservation. Race didn't predominate in the process.

### B. Plaintiffs have not—and cannot—allege that race predominated in the City's redistricting process.

***The substantive standards that apply.*** Racial predominance is a critical component of any racial gerrymandering claim. "The Equal Protection Clause prohibits a State," or in this case a city, "without sufficient justification, from 'seperat[ing] its citizens into different voting districts on the basis of race.'" *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 187 (2017) (alteration in original) (quoting *Miller v. Johnson*, 515 U.S. 900, 911 (1995)). This requires a two-step analysis: (1) race must be the predominant factor used to draw the district, and (2), if race predominated, then the city's race-based actions must satisfy strict scrutiny. *See, e.g.*, *Cooper v. Harris*, 581 U.S. 285, 291-92 (2017).

Race predominates when it's "the criterion that" "could not be compromised," *Shaw v. Hunt*, 517 U.S. 899, 907 (1996), *subordinating* race-neutral districting criteria like "compactness, contiguity, and core preservation," *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 7 (2024). Plaintiffs must carry their burden of proving racial predominance through direct evidence, such as explicit legislative language making race predominant, *id.* at 8; circumstantial evidence, such as a district's bizarre shape explained by race alone, *id.* at 8-9; or circumstantial evidence presented through an assessment of the *Arlington Heights* factors, *see Jacksonville Branch of the NAACP v. City of Jacksonville*, 635 F. Supp. 3d 1229, 1244-45 (M.D. Fla. 2022) (collecting cases, including *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999)).

The racial predominance standard is "demanding." *Easley v. Cromartie*, 532 U.S. 234, 241 (2001). It's not enough to show that the redistricting body was "aware of racial demographics." *Miller*, 515 U.S. at 916.

The high bar for racial predominance makes sense. Race consciousness is permissible. Intentionally creating majority-minority districts is too. *See Allen v. Milligan*, 599 U.S. 1, 31-32 (2023); *Bush v. Vera*, 517 U.S. 952, 958-62 (plurality). That's particularly so because section 2 of the Voting Rights Act affirmatively prohibits minority vote dilution in compact, majority-minority areas. *See, e.g.*, *Rose v. Sec'y*, 87 F.4th 469, 474 (11th Cir. 2023) (citing 52 U.S.C. § 10301(a)); *Davida Johnson v. Zell Miller*, 922 F. Supp. 1556, 1568 (S.D. Ga. 1995); Doc.1 at ¶ 87.

In addition, given the "sensitive nature of redistricting," *Miller*, 515 U.S. at 916, a "presumption that the legislature acted in good faith" attaches, meaning that there's a presumption race was *not* a predominant motive, *Alexander*, 602 U.S. at 6. This presumption applies at every stage of litigation from the pleadings through trial. *Miller*, 515 U.S. at 916-17. And this "especially stringent" presumption "directs district courts to draw the inference that cuts in the legislature's favor when confronted with evidence that could plausibly support multiple conclusions." *Alexander*, 602 U.S. at 10-11; *see also League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1373-74 (11th Cir. 2022) (requiring same when assessing snippets from the legislative record).

At its core, the presumption of good faith "ensures that 'race for its own sake, and not other districting principles, was the legislature's dominant and controlling

6

rationale in drawing its district lines.'" *Alexander*, 602 U.S. at 10 (quoting *Miller*, 515 U.S. at 913). Importantly, the presumption avoids having the judicial branch be "quick to hurl" race-based "accusations at the political branches." *Id.* at 11.

***Plaintiffs fail to state a plausible case for racial predominance.*** Applying the substantive standard to this case makes clear that Plaintiffs can't carry their burden of pleading a plausible case for racial predominance. No factual allegations or "reasonable inferences" from those allegations can save Plaintiffs' complaint from dismissal. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

Plaintiffs chose to rely exclusively on direct evidence to plead their case for racial predominance. They selectively quote Mr. Spitzer, the redistricting consultant; Mr. Gross, the City Attorney; and the City Commissioners. Plaintiffs' approach is nothing more than a cherry-picking of the record. The better approach is to focus on the documents as a whole, and to reject allegations that are inconsistent with the broader review. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (collecting cases); *see also Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document [incorporated by reference into] the complaint.").

First, consider Mr. Spitzer's memorandum. Plaintiffs allege in conclusory fashion that "[t]he memorandum's discussion of the eight options focused almost exclusively on their approach's impact on whether it was possible to draw two majority-Black zones." Doc.1 at ¶ 24. They cite two selected statements from the

7

memorandum. Doc.1 at ¶¶ 27-28. But even a cursory review of Mr. Spitzer's memorandum proves these allegations to be inaccurate.

Mr. Spitzner's memorandum is five pages long. The first three pages discuss the various criteria to be considered such as compactness, contiguity, respect for boundaries, refusal to take incumbency into account, core preservation, and, yes, race. Doc.7-3 at 1-3. The remaining two pages highlight differences between the alternative redistricting plans, noting that each balances the various criteria being considered. Doc.7-3 at 4-5. For example, the memorandum states that "[e]ach of these alternative plans maintain the cores of the existing districts and existing district boundaries to the extent possible" and proceeds to explain the boundaries, such as major roadways. Doc.7-3 at 4-5. Great care is taken to explain which alternatives underpopulate or overpopulate specific districts. Doc.7-3 at 4. True, race is discussed, but only as *a* factor being considered. Doc.7-3 at 4.

Second, the transcripts. Plaintiffs' out-of-context and selected allegations from the transcripts fare no better.

Take, for example, the August 6, 2025, workshop. Plaintiffs allege that Mr. "Spitzer began his presentation by outlining the criteria that guided his proposals," and then they focus in on Mr. Spitzer's statements about race. Doc.1 at ¶ 30. But just as with Mr. Spitzer's memorandum, Mr. Spitzer's statements at the workshop walked through *all* of the relevant criteria for redistricting, with race being but one consideration. Doc.7-4 at 4:12–5:17.

Similarly, when viewed as a whole, in all four of the transcripts, comments by the City Attorney and City Commissioners focus on their effort to balance the several factors under consideration. As Mr. Spitzer said: "It's difficult, often, to attain all of these criteria at the same time. In fact, there isn't a plan in existence now that attains all of these criteria at 100% for each criteria. It's just impossible to do that." Doc.7-4 at 5:14-16. The transcripts show a genuine back and forth about where to draw lines. They show significant time being spent on balancing the various redistricting criteria, and on issues such as the appropriate representation for the Main Street community and the beaches. *See, e.g.*, Doc.7-4 at 17:11-14 ("And before I forget, I might say this too. In 1, 1A, and 1B, this preserves the practice of having the beach split by three districts. And in some jurisdictions that we've been involved with, it's sort of the policy there that the beach is a *community-wide asset* and that it should be represented by as many people as is possible, and that's what this does." (emphasis added)); Doc.7-6 at 4:13-21 (Main Street); Doc.7-6 at 7:19–8:3 (Main Street); Doc.7-6 at 13:19-22 (Main Street); Doc.7-6 at 15:2-3 (Main Street).

Even if this Court could infer from Plaintiffs' selective quotation that race predominated for a particular individual, which is a stretch, we still can't say that "the [City Commission] *as a whole* was imbued with racial motives." *Brnovich v. DNC*, 594 U.S. 647, 689 (2021) (emphasis added); *see also United States v. O'Brien*, 391 U.S. 367, 384 (1968) (explaining that motives of one shouldn't be imputed to others).

But Plaintiffs nevertheless ask this Court to infer from the five primary source materials that race predominated for the whole City Commission. They also say that

9

the City's decision to draw districts five and six "splits communities and subordinates traditional redistricting criteria." Doc.1 at ¶ 83. They never support this conclusory statement with an explanation of which communities. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (requiring facts, not conclusions).

Plaintiffs' pleading deficiency is particularly pronounced because they fail to provide alternative maps for the proposed zones. The Supreme Court made clear that "[w]ithout an alternative map, it is difficult for plaintiffs to defeat [this Court's] starting presumption that the [City] acted in good faith." *Alexander*, 602 U.S. at 10. An alternative map, the Supreme Court explained, can be easily drawn and "can perform the critical task of distinguishing between" permissible and impermissible motivations in drawing district lines. *Id.* at 34. This alternative map becomes essential for plaintiffs in racial-gerrymandering cases where there's a lack of weighty "direct evidence." *Id.* In other words, given the lack of other allegations, "only an alternative map" "can carry the day" for Plaintiffs in this case; only with such a plan can they state a plausible claim for relief. *Id.* at 34-35 (cleaned up); *see also Black Voters Matter Capacity Bldg. Inst., Inc. v. Sec'y, Fla. Dep't of State*, 415 So. 3d 180, 198 (Fla. 2025) ("To establish the invalidity of the Enacted Plan, the plaintiffs bore the burden of proving the possibility of drawing a North Florida district that is both non-diminishing and non-race-predominant. And the plaintiffs had to do so with an alternative map.").

## Conclusion

After the most recent decennial census, the City was charged with balancing a variety of factors in the redistricting of its City Commission. One was race. Based on

10

the material properly considered at the pleading stage, race didn't predominate. Plaintiffs have failed to state a plausible case for racial predominance, one that overcomes the presumption of good faith. This Court should thus dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

## LOCAL RULE 3.01(G) CERTIFICATE

I certify that, on November 17, 2025, I conferred with Plaintiffs' counsel via phone. Plaintiffs oppose the relief requested in this motion.

Dated: November 17, 2025

Respectfully submitted by,

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Valerie L. Chartier-Hogancamp (FBN 1011269)
Randall M. Raban (FBN 1055100)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
vhogancamp@holtzmanvogel.com
rraban@holtzmanvogel.com
zbennington@holtzmanvogel.com

*Counsel for the City of Daytona Beach*

## **CERTIFICATE OF SERVICE**

    I certify that on November 17, 2025, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil
