IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VOTE!, et al.,

    *Plaintiffs*,

v.                                               Case No. 6:25-cv-1980

CITY OF DAYTONA BEACH, et al.,

    *Defendants*.
_____/

**CITY OF DAYTONA BEACH'S SUPPLEMENTAL BRIEF
CONCERNING *LOUISIANA V. CALLAIS***

The City of Daytona Beach has moved to dismiss this case. Doc.26. If this Court does *not* grant the motion to dismiss, then the City asks for a stay of these proceedings until the Supreme Court issues its decision in *Louisiana v. Callais*, Case No. 24-109. Though the City maintains that its enacted plan complies with existing redistricting precedent, the decision in *Callais* may well require the City to draw a new plan to comply with the Fourteenth Amendment's Equal Protection Clause. Absent outright dismissal of this case, waiting makes sense. *See, e.g.*, *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009) ("In this case, however, the reason for the district court's stay was at least a good one, if not an excellent one: to await a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues in the stayed case.").

**I.** *Callais* has an unusual procedural posture that portends a change in the law. The case was first argued on March 24, 2025. *See* Supreme Court Docket, Case No. 24-109.[1] It was re-listed for a second argument on June 27, 2025. *Id.* And it was re-argued on October 15, 2025. *Id.* Past cases re-argued before the Supreme Court include *Brown v. Board of Education*, 347 U.S. 483 (1954) (segregation); *Roe v. Wade*, 410 U.S. 113 (1973) (abortion); and *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010) (campaign finance). Each is a landmark decision. The re-listing and re-argument of *Callais* suggests that it may be one as well.

---

1. The Supreme Court's docket is available at: https://www.supremecourt.gov/docket/docketfiles/html/public/24-109.html.

**II.** Before the re-argument, on August 1, 2025, the Supreme Court also asked the parties to brief "[w]hether the State's intentional creation of a second majority-minority congressional district violates the Fourteenth or Fifteenth Amendments to the U.S. Constitution." Aug. 1, 2025 Order. That's an issue the Court has confronted in the past. *Compare Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 275 (2015) (declining to express a view on "whether the intentional use of race in redistricting, even in the absence of proof that traditional districting principles were subordinated to race, triggers strict scrutiny"), *with League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 517 (2006) (Scalia, J., concurring in judgment in part and dissenting in part) ("[W]hen a legislature intentionally creates a majority-minority district, race is necessarily its predominant motivation[,] and strict scrutiny is therefore triggered.").

The Supreme Court may now answer the question by saying that *any* consideration of race in the redistricting process violates the U.S. Constitution. As it currently stands for redistricting, race *consciousness* is permissible but racial *predominance* requires the government to satisfy strict scrutiny. *See, e.g.*, *Cooper v. Harris*, 581 U.S. 285, 291-92 (2017). Elsewhere in the constitutional constellation, any decision taken "because of" race triggers strict scrutiny regardless of whether racial considerations predominated. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). The Court may choose to align redistricting precedent with the other equal protection cases. *Id.*; *see also Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181 (2023) (ending the use of race-based consideration in college admissions).

Or the Supreme Court could answer the question posed by better defining the line between race consciousness and racial predominance. It could lay out clearer markers for when there's been too much consideration of race—when race becomes "the criterion that, in the State's view, could not be compromised." *Shaw v. Hunt*, 517 U.S. 899, 907 (1996). The Chief Justice suggested as much at oral argument in *Callais*. Oral Argument Transcript, Oct. 15, 2025, Tr.17:16-22 ("CHIEF JUSTICE ROBERTS: You've said several times that [race is] playing an outsized—outsized role. Is there—what's the proper size? In other words, what—are we—is it wiggle room we're talking about or a significant percentage? What is meant by 'outsized'?").[2]

Or the Supreme Court could go down the Voting Rights Act branch of the analysis. After all, section 2 of the Act mandates the creation and preservation of minority voting strength in geographically compact areas under the appropriate circumstances. *See Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986). But the United States takes the position in *Callais* that the *Gingles* framework for section 2 is "vague," "too malleable," and in need of replacement. USA Supp. Br. at 14; *see also id.* at 14-31. That would have an effect in this case because an attempt to avoid liability under the Voting Rights Act helps satisfy strict scrutiny. *See, e.g.*, *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 195-96 (2017).

---

2. The transcript is available at: https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-109_5i36.pdf.

Relying on the recency of existing redistricting precedent offers little refuge because it's the validity of that precedent that now seems to be at issue. As the Chief Justice said when his recent opinion for the Court in *Allen v. Milligan*, 599 U.S. 1 (2023), was brought up: "Counsel, you began with Allen against Milligan. That case, of course, took the existing precedent as a given and considered Alabama's application of the—its approach to the evidence and all that under that precedent." Oral Argument Transcript, Oct. 15, 2025, Tr.8:6-11.

The bottom line then is this: Depending on what the Supreme Court does in *Callais* and how it does it, the City of Daytona Beach may need to redraw its districts. So, unless this Court dismisses the existing complaint for the pleading deficiencies outlined in the motion to dismiss, it should wait for a decision in *Callais*. Both this Court and the City should know the relevant standards that will guide judicial review and any line drawing.

Dated: November 21, 2025      Respectfully submitted by,

/s/ *Mohammad O. Jazil*
Mohammad O. Jazil (FBN 72556)
Valerie L. Chartier-Hogancamp (FBN 1011269)
Randall M. Raban (FBN 1055100)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
vhogancamp@holtzmanvogel.com
rraban@holtzmanvogel.com
zbennington@holtzmanvogel.com

*Counsel for the City of Daytona Beach*

4

5

## CERTIFICATE OF SERVICE

I certify that on November 21, 2025, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

*/s/ Mohammad O. Jazil*
Attorney
