IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VOTE!, *et al.*,

    *Plaintiffs*,

v.   Case No. 6:25-cv-1980-PGB-RMN

CITY OF DAYTONA BEACH, *et al.*,

    *Defendants*.

_____/

**PLAINTIFFS' BRIEF RE *LOUISIANA V. CALLAIS***

The Court has asked whether the PI motion should wait for the Supreme Court's decision in *Louisiana v. Callais*. For the reasons discussed below, it should not.

**I.    Background of *Callais***

In 2022, voters and organizations sued Louisiana under Section 2 of the Voting Rights Act (VRA), alleging that the VRA required a second congressional district in which Black voters had an opportunity to elect candidates of their choice. The trial court granted a preliminary injunction. *Robinson v. Ardoin*, 605 F.Supp.3d 759, 766–68 (M.D. La.), *stay and cert. before judgment granted,* 142 S.Ct. 2892 (2022), *and stay vacated and cert. dismissed as improvidently granted*, 143 S.Ct. 2654, *and vacated and remanded*, 86 F.4th 574 (5th Cir. 2023). Louisiana eventually adopted a new map with a second majority-Black district, remedying the VRA violation. *Robinson v. Ardoin*, 731 F.Supp. 3d 711, 717 (M.D. La. 2024).

Different voters then challenged that remedial VRA district as a Fourteenth Amendment racial gerrymander. The trial court panel majority agreed, finding that

1

race predominated in the drawing of the district, and that the use of race failed narrow tailoring, even assuming VRA compliance was a compelling interest. *Callais v. Landry*, 732 F.Supp.3d 574, 606–07, 613 (W.D. La.), *stay granted*, 144 S.Ct. 1171, *and probable juris. noted*, 145 S.Ct. 434 (2024).

Louisiana and the *Robinson* plaintiffs (now defendant-intervenors) appealed. Louisiana framed the questions presented as:

1. Whether the Plaintiffs failed to establish Article III standing.
2. Whether the district court majority erred in concluding that [the new Black-majority] District 6 is an unconstitutional racial gerrymander.
3. Whether this case is non-justiciable.

Appellant La.'s Br. at i (Dec. 19, 2024). After hearing argument last term, the Supreme Court ordered supplemental briefing and reargument on this question: "Whether the State's intentional creation of a second majority-minority congressional district violates the Fourteenth or Fifteenth Amendments to the U.S. Constitution." *Callais*, 2025 WL 2180226 (U.S. Aug. 1, 2025).

## II. The Instant Case and PI Motion

On October 1, 2025, the Daytona Beach City Commission adopted a new redistricting map for its six zones. Plaintiffs filed suit thirteen days later, alleging that Zones 5 and 6 are racial gerrymanders because the City set a 50% Black population target for them and had no compelling interest in using race in this way. ECF No. 1. Six days after that, Plaintiffs filed their PI motion. ECF No. 7. Plaintiffs seek relief in time for the next elections in August and November 2026.

### III. This case should proceed notwithstanding *Callais.*

Racial gerrymandering claims involve "a two-step analysis." *Cooper v. Harris*, 581 U.S. 285, 291 (2017). First, plaintiffs must prove that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district," and "that the legislature subordinated traditional race-neutral districting principles . . . to racial considerations." *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 187 (2017) (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)). Plaintiffs here argue that race predominated in Zones 5 and 6 because the City "expressly adopted and applied a policy of prioritizing mechanical racial targets"—that Zones 5 and 6 should each be at least 50% Black. *Ala. Legis. Black Caucus v. Alabama* (*ALBC*), 575 U.S. 254, 267 (2015).

*Callais* is unlikely to have any bearing on this first step. The Supreme Court reiterated its well-established racial predominance standard just last year. *Alexander v. S.C. State Conf. of NAACP*, 602 U.S. 1, 7–8 (2024) (citing, *inter alia*, *Cooper*, *Bethune-Hill*, *ALBC*, and *Miller*). The only parties seeking to change this standard in *Callais* argue the Court should go further and decide that a race-predominant district is *always* unconstitutional, even when the VRA might require one. Appellees' Supp. Br. at 1–5 (Sep. 17, 2025); La.'s Supp. Br. at 1–5 (Sep. 17, 2025). Arguments also focus on narrowing the VRA's breadth. Appellees' Supp. Br. at 2–5; U.S.'s Supp. Br. at 2–4 (Sep. 24, 2025). If the Supreme Court adopts the sweeping arguments Louisiana and the *Callais* appellees advance, Plaintiffs' task in this case will be *easier*, not harder. But since current law already compels the Court to grant the PI motion, waiting on *Callais*

would serve no purpose other than to unjustifiably delay relief from "the immense harm caused by racial gerrymandering." *Jacksonville Branch of NAACP v. City of Jacksonville*, No. 22-13544, 2022 WL 16754389, at *5 (11th Cir. Nov. 7, 2022).

The second step in a racial gerrymandering case is strict scrutiny. *Alexander*, 602 U.S. at 6. Under existing law, the government can justify a race-predominant district by the need to comply with the VRA, but only if "it had 'a strong basis in evidence' for concluding that the statute required its action.'" *Cooper*, 581 U.S. at 292 (quoting *ALBC*, 575 U.S. at 278). Plaintiffs here argue that no such strong basis existed, because one of the three *Gingles* preconditions for VRA liability is absent in Daytona Beach. "If a State has good reason to think that all the '*Gingles* preconditions' are met, then so too it has good reason to believe that § 2 requires drawing a majority-minority district. But if not, then not." *Cooper*, 581 U.S. at 302 (citation omitted).

At bottom, *Callais*'s new question presented is about the limits on the use of race in remedying VRA violations. Since Plaintiffs here argue that there is no potential VRA violation to remedy and posit that the VRA does not require the City to consider race in its mapping at all, *Callais* can have little impact on this case.

Finally, the City suggests that it might *sua sponte* redraw its map after *Callais*. Such a hypothetical "voluntary cessation" is far too speculative to merit a stay, and in any event is unlikely to happen before the February 5, 2026 statutory deadline for the City Commission to change its own zones. *See* Fla. Stat. § 166.0321. Any *ultra vires* attempt by the City to adopt a new map after that deadline would be void. *Id.*

4

### IV. The Court should follow the example of its sister courts adjudicating other racial gerrymandering and VRA cases.

Notably, other racial gerrymandering cases around the country are proceeding expeditiously while the Supreme Court considers *Callais*. Earlier this month, the Republican Party and voters challenged California's new congressional map as a racial gerrymander. *Tangipa v. Newsom*, No. 2:25-cv-10616 (C.D. Cal. Nov. 5, 2025), ECF No. 1. The United States intervened to allege racial gerrymandering and VRA Section 2 claims. *Tangipa* (Nov. 13, 2025), ECF No. 28-2. Far from pausing the case to await *Callais*, the court largely adopted the parties' proposed expedited briefing schedule and set a PI hearing for December 3. Order, *Tangipa* (Nov. 14, 2025), ECF No. 38.

Likewise, in Texas and North Carolina, racial gerrymandering challenges to new congressional maps are proceeding quickly. The Texas panel acknowledged "the need to proceed as quickly as possible on the Plaintiffs' Preliminary Injunction Motions" and granted a PI earlier this week. Order, *LULAC v. Abbott*, No. 3:21-cv-259 (W.D. Tex. Aug. 28, 2025), ECF No. 1146 at 1; *LULAC*, 2025 WL 3215715 (W.D. Tex. Nov. 18, 2025), *appeal filed*. The North Carolina panel also expedited that case. *Williams v. Hall*, 1:23-cv-1057 (M.D.N.C. Nov. 6, 2025), ECF No. 198 (PI hearing held this week over map adopted October 22, and pretrial deadlines in April and May). Just yesterday, the same panel issued a post-trial ruling on racial gerrymandering and VRA claims against North Carolina's 2023 State Senate and congressional maps. *Williams*, 2025 WL 3240456, at *30–57 (M.D.N.C. Nov. 20, 2025).

These cases' expedited schedules clearly signal: racial gerrymandering claims

assert weighty and fundamental rights, and courts should not delay when adjudicating and enforcing those rights. *See Jacksonville,* 2022 WL 16754389, at *5 ("[W]e decline to require the residents of Jacksonville to live for the next four years in districts defined by a map that is substantially likely to be unconstitutional."). For these reasons, the Court should not pause consideration of the PI motion or this case pending *Callais*.

        Respectfully submitted November 21, 2025,

        */s/ Nicholas L.V. Warren*
        Nicholas L.V. Warren (FBN 1019018)
        Caroline A. McNamara (FBN 1038312)
        Daniel B. Tilley (FBN 102882)
        **ACLU Foundation of Florida**
        4343 West Flagler Street, Suite 400
        Miami, FL 33134
        (786) 363-1769
        nwarren@aclufl.org
        cmcnamara@aclufl.org
        dtilley@aclufl.org

        *Counsel for Plaintiffs*