# Rebuttal Report: Racially Polarized Voting in Daytona Beach, Florida

Bryant J. Moy, PhD

December 18, 2025

## 1 Executive Summary

I was asked to respond to the limited critiques of my report offered by Dr. Sean Trende. My original report examined thirty-one elections held between 2016 and 2025, found racially polarized voting in twenty-five of those elections, and concluded that white bloc voting in Daytona Beach precincts does not usually defeat the candidates preferred by Black voters, who prevail in eighteen of the twenty-five polarized contests.

In what follows, I respond to specific issues raised by the City's rebuttal witness:

- The criticism of my use of ecological regression rather than ecological inference, and the assumptions of each method. I briefly explain the assumptions of each method and why ecological regression is appropriate here given the number of precincts in the relevant local contests in my view.

- The use and interpretation of the 60 percent threshold for defining cohesive support within a racial group. I explain that it is a conservative rule of thumb and that the classification of racially polarized elections in my report does not turn on the exact cutoff.

- The inclusion of prior city commission and mayoral elections, and contests with small numbers of precincts, in assessing racially polarized voting. I explain why these local contests remain relevant for assessing voting patterns for the offices at issue and why they do not drive the overall conclusion.

- Dr. Trende claims that elections since 2022 undermine my conclusion that white bloc voting does not usually defeat Black-preferred candidates. The most recent contest – the special election for the Sixth Congressional District – showed signs of racially polarized voting.

- The suggestion that the analysis should focus on minority rather than minority candidates of choice. This would be inappropriate and does not generalize across contexts.

## 2 Rebuttal Report

In this rebuttal I respond to the limited critiques of my report offered by Dr. Sean Trende. My original analysis examines a broad set of elections from 2016 to 2025, including both city contests and county, state, and federal elections. I find racially polarized voting in most of these elections and conclude that white bloc voting is usually not sufficient to defeat Black-preferred candidates in Daytona Beach. Most of the losses occur in exogenous statewide or federal races in 2022.

### 2.1 Use of Ecological Regression

Dr. Trende first questions my choice to use ecological regression rather than ecological inference. Ecological regression models the precinct-level vote share for a candidate as a linear function of the precinct's racial composition. In the two-group case, the model represents the observed vote share as a weighted average of two unknown group-specific support rates, one for Black voters and one for white voters. The key assumption is that these group-specific rates are approximately constant across precincts. My report describes this approach and applies it across contests.

1

Ecological inference in the sense used by King and others takes a different route. That framework relaxes the constancy assumption by allowing each precinct to have its own pair of group-specific support rates. It then imposes structure on how those rates vary across precincts by assuming that they follow a truncated bivariate normal distribution over the unit square. That distribution has its own parameters for means, variances, and covariance. Ecological inference therefore uses more degrees of freedom to represent cross-precinct variation, and it trades the strong constancy assumption of ecological regression for a layer of parametric assumptions about the shape of that variation.

To the above point, the literature does not contain a single accepted standard that requires to use ecological inference instead of ecological regression in all settings. The choice between the two methods is therefore a choice between different sets of assumptions and different ways of using what we all have acknowledged is limited information.

I choose the ecological regression approach to be consistent across all of my cases and to address the concern of having a smaller amount of data. As both the original report and the rebuttal report by Trende acknowledge, the data are sparse in a few districts. That is to say, some contests in Daytona Beach involve a small number of precincts. With such small numbers of units, the additional parameters in a full ecological inference model cannot be estimated with any precision or reliability. The likelihood for the ecological inference model becomes nearly flat along several directions and the resulting estimates depend mainly on the assumed truncated normal distribution rather than on the observed data. Ecological regression, by contrast, uses a small number of parameters for each contest. It places the main structural assumption in a simple linear relationship between precinct composition and candidate vote share that can be seen directly in the graphs. In this setting the lower-dimensional structure of ecological regression is a better match, in my opinion, to the amount of information in the data. For contests with only three precincts or which lack much variation in composition share, I acknowledge that regression estimates are imprecise. Those particular contests do not drive my conclusions. The patterns I report are consistent in the larger exogenous contests, such as Presidential, U.S. Senate, and statewide executive races, where Daytona Beach has many precincts.

## 2.2   Cohesion Threshold

Dr. Trende next questions my use of a 60 percent threshold to define cohesive support within a racial group. I treat support at or above 60 percent within a group as evidence that the group is voting cohesively for that candidate. This rule distinguishes strong, consistent backing from marginal tilts. This just serves as a benchmark. In practice, the cutoff makes little difference here because the polarized contests show very strong separation in candidate preference by race, so any reasonable threshold above 50 percent would yield the similar classifications for most contests. The 60 percent rule simply makes explicit that I emphasize elections where each group shows strong support for its preferred candidate. That being stated, there does not appear to be a single threshold that the literature uses universally.

## 2.3   Examining Endogenous (City Commission) Races

Dr. Trende also criticizes my decision to examine prior commission races and notes that some districts have changed over time. My report analyzes four city elections that include two mayoral elections and two elections for Commission Zone 3. These contests are nonpartisan, but they directly involve the offices at issue and therefore provide important information about how the maps perform for Black and white voters. The fact that commission boundaries have changed does not negate the value of this evidence. These elections still reveal whether Black and white voters in Daytona Beach tend to prefer different candidates for city office and whether white bloc voting is usually sufficient to defeat the Black-preferred candidate in those contests. The analysis of exogenous county, state, and federal elections extends this inquiry by showing how the same precincts behave in larger elections with partisan labels. My overall conclusions do not depend on any single commission race.

## 2.4   Examining a Range of Elections Across Time

With respect to timing, Dr. Trende focuses on elections beginning in 2022 and argues that the record looks less favorable when restricted to that brief period. My report does not rely on a single cycle. It evaluates

the full set of elections from 2016 through 2025 and concludes that white bloc voting does not usually defeat the candidates preferred by Black voters. The losses I identify are concentrated in a small set of exogenous contests in 2022, along with the 2018 County Council At-Large primary, and they do not overturn the overall pattern across the decade. Consistent with that broader pattern, the most recent contest in my analysis, the special election for U.S. House District 6, also shows racially polarized voting. Even limiting the scope of analysis to Dr. Trende's preferred two election cycles, it is clear white bloc voting does not usually defeat Black voters' preferred candidates. Indeed, in the 14 contests I studied from 2022 to 2025, the Black-preferred candidate lost in only 6 (42.9%) of them.

## 2.5 Examining Black Voters' Preferred Candidates Versus Candidates Who Are Black

Finally, Dr. Trende suggests that one should examine the performance of minority candidates and notes that three statewide minority candidates in 2022 lost. However, there is a distinction between minority candidates running and identifying minority candidates of choice. It would be inappropriate to just look at minority candidates because in other contexts, minority candidates are not the minority candidate of choice. My report identifies, for each contest, which candidate Black voters prefer and which candidate white voters prefer, and it records whether the Black-preferred candidate carries Daytona Beach precincts. The 2022 statewide races that feature minority candidates are already included in my count of seven losses for Black-preferred candidates, and these losses form part of the exogenous 2022 cluster that I have acknowledged. Moreover, Dr. Trende seems to ignore the minority candidates who did prevail. Out of the 8 other contests where a Black person was also Black voters' preferred candidate, in 7 of those 8 the Black candidate prevailed over white voters' preference.[1]

# 3 Summary

In sum, my report uses a standard ecological regression approach that is appropriate for the number of precincts and the purpose of the analysis. The 60 percent cohesion threshold is rule of thumb that does not affect the overall conclusions of racially polarized voting in Daytona Beach. I include prior commission races for context on local offices because they are relevant in assessing the overall patterns of racially polarized voting. The pattern in the full set of elections remains that white bloc voting does not usually defeat the Black-preferred candidate in Daytona Beach. Nothing in Dr. Trende's critique substantively alters these conclusions.



Bryant J. Moy, Ph.D.
Date: December 18, 2025

---

1. Those contests are the following: 2020 Presidential, 2022 County Council 2, 2020 Mayor, 2018 Attorney General, 2018 Commission Zone 3, 2018 Governor, 2018 County Council At Large, and 2016 Mayor.