**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**VOTE!, JOSEPHINE POPE, GABRIELLE ADEKUNLE and VICTOR VALENTIN,**

**Plaintiffs,**

**v.** **Case No: 6:25-cv-1980-PGB-RMN**

**CITY OF DAYTONA BEACH and LISA LEWIS,**

**Defendants.**
_____________________________/

**ORDER**

This cause is before the Court on Defendant City of Daytona Beach's (the "**City**") Motion to Dismiss. (Doc. 26 (the "**Motion**")). The Plaintiffs VOTE!, Josephine Pope, Gabrielle Adekunle, and Victor Valentin (collectively, the "**Plaintiffs**") submitted a Response in Opposition. (Doc. 33). Upon consideration, the City's Motion is denied.

## I. BACKGROUND

In the Complaint (Doc. 1 (the "**Complaint**")), the Plaintiffs allege that Zones 5 and 6 of the redistricting maps adopted by the Daytona Beach City Commission on October 1, 2025 (the "**Enacted Plan**"), constitute racial gerrymandering. (*Id.* ¶¶ 26, 39, 93–96). The Plaintiffs claim the City set a 50% Black population target for these two zones and lacked a compelling interest in subordinating race-neutral districting principles to racial considerations. (*Id.* ¶¶

36, 39, 79, 87–91, 93–96). Accordingly, the Plaintiffs bring a claim under 42 U.S.C. § 1983 and allege that the City racially gerrymandered the challenged zones in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 92–97).

The City moves to dismiss the Complaint, arguing that the Plaintiffs have alleged at most race consciousness, not racial predominance, and that race consciousness does not trigger strict scrutiny. (Doc. 26, p. 2).[1] That is, the City contends that the Plaintiffs cannot make a plausible case for racial predominance. (*Id.*). The City argues that "[r]ace predominates only when it becomes the one criterion that displaces other race-neutral districting criteria such as compactness, contiguity, adherence to geographic and political boundaries, ignoring incumbency, and core preservation." (*Id.*). The City contends that it evaluated multiple redistricting alternatives and, "[e]ach satisfied traditional, race-neutral redistricting criteria like compactness, contiguity, and core preservations" and urges the Court to consider the five sources of materials quoted in part by the Plaintiff in ruling on its motion to dismiss.[2] (*Id.* at pp. 2–4, 6, 9). The City relies on the incorporation-by-reference doctrine, which allows the Court to consider a document reference in a complaint without converting the motion into one seeking

[1] The City's Motion has two pages identified as page 1, and the Court will refer to the CM/ECF pagination on the header. (*See* Doc. 26, pp. 1–2).

[2] The materials referenced in the Complaint are: (1) July 17, 2025 memorandum by Kurt Spitzer; (2) statements from an August 6, 2025 workshop; (3) statements from an August 20, 2025 meeting; (4) statements from a September 3, 2025 meeting, and (5) statements from an October 1, 2025 meeting. (Doc. 26, p. 3 (citing Doc. 1)).

summary judgment. (*Id.*); *see Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (noting that to incorporate a document by reference into a complaint the document must be "(1) central to the plaintiff's claim[,] and (2) undisputed" as to its authenticity).[3]

The Plaintiffs counter that the Complaint presents a claim to relief, plausible on its face, that the City violated the Fourteenth Amendment by using race as the predominant factor in enacting its district map and did so without sufficient justification. (Doc. 33, p. 1). The matter is ripe for the Court's review.

## II. LEGAL STANDARDS

A court should dismiss a complaint for failure to state a claim upon which relief can be granted "only when the plaintiff's factual allegations, if true, don't 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295 (11th Cir. 2021) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see* FED. R. CIV. P. 12(b)(6). "In determining whether allegations satisfy this standard, [the court] must 'view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true.'" *Id.* (quoting *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007)). However, at the same time, the court must disregard "[t]hreadbare recitals

---

3 The Plaintiffs assert the referenced documents are not "central" to Plaintiffs' claim and should not be incorporated by reference. (Doc. 33, p. 6). The Court does not necessarily disagree with the Plaintiffs, but the inclusion of the five documents attached to the Plaintiffs' motion for preliminary injunction (*see* Doc. 7) does not alter the outcome.

of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring a plaintiff to allege "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do.").

The "Fifteenth Amendment bars only state action 'motivated by a discriminatory purpose.'" *Louisiana v. Callais*, 608 U.S. 85, 146 S.Ct. 1131, 1155 (2026) (quoting *Reno v. Bossier Parish School Bd.*, 520 U.S. 471, 481 (1997)). "For this reason, the focus of § 2 [of the Voting Rights Act] must be enforcement of the Fifteenth Amendment's prohibition on *intentional* racial discrimination." *Id.* This interpretation of § 2 "imposes liability only when the circumstances give rise to a strong inference that intentional discrimination occurred." *Id.* at 1156. Once this inference is properly pleaded, the State must "satisfy the 'extraordinarily onerous' standard of proving that its use of race was narrowly tailored to further a compelling governmental interest." *Id.* at 1161 (citing *Alexander v. S.C. State Conference of the NAACP*, 602 U.S. 1, 11 (2024)). For today, the issue is simply whether the Plaintiff has properly pleaded a claim for racial gerrymandering; that is, that race was the predominant factor in the design of Zones 5 and 6 in the Enacted Plan.

## III. DISCUSSION

The Motion rests on the premise that the Complaint pleads no more than permissible race consciousness. (*See generally* Doc. 26). The Court disagrees. The Complaint alleges sufficient particularized factual matter to support a reasonable

inference that race predominated in drawing Zones 5 and 6. That said, the Court leaves for another day the factual determination of whether race was the predominant factor. (Doc. 1, ¶¶ 79–85, 94).

The City does not dispute that the materials cited by the Plaintiffs are sufficient to plead a claim. Rather, the City contends that, when considered as a whole, the materials do not properly plead the cause of action. (Doc. 26, pp. 8–11). The Plaintiffs counter that "[i]n crafting Zones 5 and 6, the Commission set an arbitrary and unjustified racial target: that they should have at least 50% Black residents." (Doc. 33, p. 3 (quoting Doc. 1, p. 1)); *see Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 267 (2015) ("[E]xpressly adopt[ing] a policy of prioritizing mechanical racial targets above all other districting criteria (save one-person, one-vote) provides evidence that race motivated the drawing of particular lines[.]").

The Complaint alleges that City officials set and repeatedly used an approximately 50% Black-population benchmark for both challenged zones; characterized plans that fell short of maintaining the two majority-minority zones as defective; rejected or disfavored alternatives because they would not retain two such zones; directed the map-drawing consultant to preserve majority-minority "numbers and margins;" and approved a plan that allegedly sacrificed a community interest in Beachside to retain the two majority-minority zones. (Doc.

1, ¶¶ 24–28, 34–38, 47–55, 65–77, 79–84). Moreover, the Commission adopted the Enacted Plan by a 6–0 vote, with Commissioner Reed absent.[4] (*Id.* ¶ 78).

The Complaint also alleges statements by the City Attorney, the consultant, and Commission members regarding the role of race in the process. The City Attorney is alleged to have stated that the two majority-minority zones should be preserved because historically, majority-minority zones had elected minority commissioners. (*Id.* ¶ 68). Mayor Henry agreed, stating, "the rationale for me is it increases the minority-majority district, even if slightly. That is perhaps, you know, one of the most important factors that we should be considering." (*Id.* ¶ 70). The consultant also volunteered that "[w]e attempted to get to a plan where you would maintain two minority-majority districts." (*Id.* ¶ 50).

Although the City notes that its consultant discusses compactness, contiguity, respect for boundaries, and other factors, along with race, this does not mean the Plaintiffs failed to plead a claim. (Doc. 26, p. 9 (citing Doc. 7-3, pp. 1–3)). The same is true of the Commissioners' comments addressing factors other than race. (*Id.* (citing Doc. 7-4, 5:14–16, 17:11–14; Doc. 7-6, 4:12–21, 7:19–8:3, 13:19–22, 15:2–3)). "The fact that other considerations may have played a role in the [City's] redistricting does not mean that race did not predominate." *Clark v. Putnam*, 293 F.3d 1261, 1270 (11th Cir. 2002). The Plaintiffs have identified

4 The City argues that "[e]ven if this Court could infer from Plaintiffs' selective quotation that race predominated for a particular individual, . . . , we still can't say that 'the [City Commission] *as a whole* was imbued with racial motives." (Doc. 26, p. 10 (emphasis in original)). The 6–0 vote speaks to the contrary conclusion.

sufficient evidence to support a plausible inference that race predominated for Rule 12(b)(6) purposes.

## IV. CONCLUSION

It is **ORDERED AND ADJUDGED** that Defendant City of Daytona Beach's Motion to Dismiss (Doc. 26) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on September 8, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties