IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VOTE!, et al.,

*Plaintiffs*,

v. Case No.: 6:25-cv-1980-PGB-RMN

CITY OF DAYTONA BEACH, et al.,

*Defendants*.
______________________________/

**CITY OF DAYTONA BEACH'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs seek summary judgment on whether the City of Daytona Beach's alleged use of race was narrowly tailored to serve a compelling interest. But the Court reaches that question only if Plaintiffs first prove that race predominated in the City's redistricting decision—a threshold issue they bear the burden to establish and do *not* ask this Court to decide. Plaintiffs' motion thus skips the first step of the required two-step inquiry and asks this Court to assess a racial classification the City denies making. Even accepting Plaintiffs' premise, disputed issues of material fact preclude summary judgment. This Court should deny the motion.

## I. Statement of Facts

In 2025, the City Commission redistricted. Doc. 58-1. At a workshop and three Commission meetings, the City discussed equal population, *e.g.*, Doc. 58-3 at 4, 15, 18; compactness, *id.* at 5, 10; avoiding dilution of minority voting strength, *id.* at 6; not favoring or disfavoring incumbents, *id.* at 7; representation of the beach, *id.* at 17; and where to draw lines along Main Street and around parks and community landmarks, Doc. 58-4 at 3–6; Doc. 58-5 at 4–8, 11, 13–15. Doc. 58-3 (Aug. 6, 2025 workshop); Doc. 58-4 (Aug. 20, 2025 meeting); Doc. 58-5 (Sept. 3, 2025 meeting); Doc. 58-6 (Oct. 1, 2025 meeting). The City's redistricting consultant, Kurt Spitzer, likewise identified the governing criteria: equal population, avoiding dilution of minority voting strength, not favoring or disfavoring incumbents, compactness and contiguity, following natural and man-made boundaries, retaining existing district boundaries, and avoiding splitting communities of interest. *E.g.*, Doc. 35-3 at 2–4; Doc. 58-2 at 1–3.

The existing plan already had two majority-black districts, Zones 5 and 6, and a third district with a black population just over 30%. Doc. 58-3 at 8–9. The City Attorney explained that since at least 2002, Zones 5 and 6 had "consistently selected African American officials," and that the City had "a history in our community of having Zones 5 and 6 as majority-minority zoning districts." *Id.* at 16. At the September 3 meeting, he reiterated that those districts "have impacted the voting" and "have consistently elected minority commissioners." Doc. 58-5 at 11–12.

The City's expert analysis supports the same conclusion. Dr. Sean Trende explained that the City's black population is concentrated in a "bottleneck" between the

barrier island and the less-populated western areas, through which districts must "naturally pass" to equalize population. Doc. 35-1 at 12. He then simulated 50,000 race-neutral plans to test whether race explains the enacted plan. *Id.* at 28–31. He found that "the racial makeup of the districts falls within the expected range for a race-neutral map at every step." *Id.* at 32.

To be sure, the experts in this case disagree about the City's voting patterns. Plaintiffs' expert, Dr. Bryant Moy, concluded that white bloc voting is not sufficient to usually defeat the black candidate of choice. Doc. 58-7 at 1, 34. Dr. Trende disputes that conclusion and Dr. Moy's methods, explaining that Dr. Moy used ecological regression rather than the more modern ecological inference technique and drew inferences from as few as three precincts. Doc. 35-1 at 36–37. In recent elections, beginning in 2022, the black candidate of choice also won just six of eleven contests. *Id.* at 36.

## II. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The movant must identify record evidence showing no genuine dispute of material fact. *Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c)(1)(A). A dispute is genuine if a reasonable jury could find for the nonmovant; a fact is material if it might affect the outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And, at summary judgment, this Court views

the evidence and draws all justifiable inferences in the nonmovant's favor. *Id.* at 255; *Thompson v. Alabama*, 65 F.4th 1288, 1297 (11th Cir. 2023).

**III. Argument**

**A.** Plaintiffs move for summary judgment on a single point—whether, if race predominated in the City's redistricting decision, that racial consideration was narrowly tailored to a compelling interest. In doing so, Plaintiffs ask this Court to decide the second step of a two-step inquiry without the first.

The Supreme Court has said that racial gerrymandering claims "call for a two-step analysis." *Cooper v. Harris*, 581 U.S. 285, 291 (2017). Plaintiffs must first prove that race predominated over other factors in the City's redistricting decisions. *Id.* Only then, if "[r]ace was the criterion that, in the [City's] view, could not be compromised," *Shaw v. Hunt*, 517 U.S. 899, 907 (1996), does the burden shift to the City to satisfy the strict scrutiny test, i.e., to show that the City's consideration of race is "narrowly tailored" to serve a "compelling interest," *Cooper*, 581 U.S. at 292. Plaintiffs acknowledge this framework. Doc. 58 at 3. Yet they don't move on the first step—the only step on which they bear the burden. Instead, they ask this Court to assume their step-one burden is satisfied and to grant summary judgment on the City's step-two burden.

**B.** Plaintiffs' approach puts the cart before the horse. The two steps are not independent elements that can be resolved in any order, such that Plaintiffs could prevail by defeating the City on step two alone. Rather, it's a sequential two-step process. Step one must first be decided, and then that result directly feeds into step two of the

inquiry. As the Supreme Court framed it in *Bethune-Hill*, "[w]hen a State justifies the predominant use of race in redistricting on the basis of the need to comply with the Voting Rights Act, 'the narrow tailoring requirement insists only that the legislature have a strong basis in evidence in support of the (race-based) choice that it has made.'" *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 193 (2017) (quoting *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 278 (2015)). The Court cannot decide step two if it does not yet know what "choice" the City purportedly made at step one.

That sequencing matters all the more because of the presumption of good faith. Given the "sensitive nature of redistricting," *Miller v. Johnson*, 515 U.S. 900, 916 (1995), a "presumption that the legislature acted in good faith" attaches, meaning that there's a presumption race was not a predominant motive, *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 6 (2024). That presumption "requires courts to exercise extraordinary caution in adjudicating claims that a State has drawn district lines on the basis of race," *Miller*, 515 U.S. at 916, and "directs district courts to draw the inference that cuts in the legislature's favor when confronted with evidence that could plausibly support multiple conclusions," *Alexander*, 602 U.S. at 10; *see also League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1373–74 (11th Cir. 2022).

The presumption works hand in hand with Rule 56. Courts must apply it "when assessing under the Federal Rules of Civil Procedure the adequacy of a plaintiff's showing at the various stages of litigation," including summary judgment. *Miller*, 515 U.S. at 916–17 (citing Fed. R. Civ. P. 56). And at summary judgment, the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in

[its] favor." *Anderson*, 477 U.S. at 255. Because the City is both the nonmovant and the beneficiary of the presumption, every reasonable inference from the record must be drawn in the City's favor.

Here, the City maintains that race did not predominate, and the record supports that position. Avoiding dilution of minority voting strength was one of several criteria the City balanced, along with equal population, compactness, incumbency, and core retention. Doc. 35-3 at 2–4; Doc. 58-2 at 1–3; Doc. 58-3 at 4–7, 10, 15, 18; Doc. 58-4 at 3–6; Doc. 58-5 at 4–8, 13–15. Plaintiffs tacitly acknowledge the dispute by declining to seek summary judgment on predominance. They ask the Court only to accept their "alleg[ation]" that race predominated. Doc. 58 at 2. But predominance is a fact-intensive question, and Plaintiffs can't sidestep a genuinely disputed element of their claim by assuming it away. As the movants, they must show that "there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex*, 477 U.S. at 323.

Plaintiffs can't carry their burden on summary judgment as to the strict-scrutiny issue while leaving unresolved the predicate that triggers such scrutiny. Yet they want it both ways. Plaintiffs' motion emphasizes "significant discussion" about a 50% black population target—classic predominance evidence—while disclaiming any need to prove predominance. Doc. 58 at 1. They thus seek the benefit of a predominance narrative without carrying the burden to prove it.

Nor does *Walen v. Burgum*, 700 F. Supp. 3d 759 (D.N.D. 2023), support Plaintiffs' position that a court may resolve strict scrutiny while merely assuming

predominance. Doc. 58 at 2–3. *Walen* involved cross-motions for summary judgment. The court found predominance genuinely disputed, assumed it without deciding, and then *denied* the challengers' motion on strict scrutiny while granting the State's motion. *Walen*, 700 F. Supp. 3d at 763, 768–69, 774–75. That posture neither shifted the burden nor disregarded the presumption of good faith, as Plaintiffs' approach would here.

**C.** Even accepting Plaintiffs' premise, their motion should be denied. The Supreme Court has "assume[d], without deciding, that the State's interest in complying with the Voting Rights Act was compelling." *Bethune-Hill*, 580 U.S. at 193. To satisfy strict scrutiny, the City therefore needs "a strong basis in evidence" for drawing the plan as it did to avoid liability under section 2 of the Voting Rights Act, *Cooper*, 581 U.S. at 292—not "uncritical" assumptions or "generalizations," *Wis. Legis. v. Wis. Elections Comm'n*, 595 U.S. 398, 403–04 (2022) (per curiam). That standard gives the City "breathing room" to adopt reasonable compliance measures that may prove, "in perfect hindsight, not to have been needed." *Cooper*, 581 U.S. at 293.

The City's basis went beyond uncritical assumptions and generalizations. It's undisputed that a large, geographically compact black community already formed two majority-black districts. Doc. 58-3 at 8–9; Doc. 35-1 at 12. That evidence addresses the first *Gingles* precondition. *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986). The record also repeatedly addressed the functional effect of black voting-age population levels in specific districts, reflecting some assessment of black political cohesion and white bloc

voting against the black candidate of choice. Doc. 58-3 at 16; Doc. 58-5 at 11–12. That evidence addresses the second and third *Gingles* preconditions. *Gingles*, 478 U.S. at 51.

The absence of a formal document addressing *Gingles* two and three doesn't defeat that showing. In *Alabama Legislative Black Caucus v. Alabama*, 231 F. Supp. 3d 1026 (M.D. Ala. 2017), the three-judge panel addressed strict scrutiny on remand from the Supreme Court. *Id.* at 1063–64, 1106–10, 1241–44. Writing for the panel, now-Chief Judge Pryor summarized the analysis as follows:

> We conclude that Alabama has satisfied strict scrutiny in two of the districts where race predominated. Alabama asserts an interest in complying with the Voting Rights Act, and it relies primarily on statements by two incumbent members of the Black Caucus at public meetings of the redistricting committee. This evidence is sufficient in those members' districts. As we explain, the Supreme Court does not require that the legislature conduct studies. It instead requires only that the legislature had a strong basis in evidence for its use of race. The statement of Senator Hank Sanders in particular is detailed and based on his experience as an influential longtime incumbent. This kind of testimony constitutes a "strong basis in evidence."

*Id.* at 1033. If statements from two legislators supplied a strong basis in evidence there, the statements in this record can do the same here.

Plaintiffs respond with Dr. Moy's analysis, but the City's expert disputes both his methods and conclusions. Dr. Moy used ecological regression rather than the more modern ecological inference technique and drew inferences from as few as three precincts. Doc. 35-1 at 36–37. Even under Dr. Moy's data, the black candidate of choice won only six of eleven elections beginning in 2022, and minority candidates lost all

three 2022 contests. *Id.* at 36–37. At minimum, that expert dispute presents a genuine issue of material fact that cannot be resolved on summary judgment.

## IV. Conclusion

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Partial Summary Judgment, Doc. 58.

Dated: October 14, 2026

Respectfully submitted by,

*/s/Mohammad O. Jazil*
Mohammad O. Jazil (FBN 72556)
Valerie L. Chartier-Hogancamp (FBN 1011269)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
vhogancamp@holtzmanvogel.com

*Counsel for the City of Daytona Beach*

## CERTIFICATE OF SERVICE

I certify that on October 14, 2026, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

*/s/Mohammad O. Jazil*
Attorney