**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

VOTE!, *et al.*,

*Plaintiffs*,

v. Case No. 6:25-cv-1980-PGB-RMN

CITY OF DAYTONA BEACH, *et al.*,

*Defendants*.

_____________________________________/

**FINAL PRETRIAL STATEMENT**

Plaintiffs VOTE!, Josephine Pope, Gabrielle Adekunle, and Victor Valentin, and Defendants City of Daytona Beach and Volusia County Supervisor of Elections Lisa Lewis jointly submit this final pretrial statement pursuant to Local Rule 3.06(b).

**(1) The basis for the court's jurisdiction.**

This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201–02, as well as 42 U.S.C. §§ 1983 and 1988, because this action arises under the Constitution and laws of the United States.

**(2) A concise statement of the action.**

Plaintiffs assert one claim under 42 U.S.C. § 1983 alleging that Daytona Beach City Commission Zones 5 and 6 in the redistricting plan adopted in 2025 ("Enacted Plan") are racially gerrymandered in violation of the Equal Protection Clause.

**(3) A concise statement of each party's position.**

Plaintiffs: City Commission Zones 5 and 6 were drawn predominantly based on

racial considerations, because the Commission designed them to purposefully reach a racial target: Black residents should make up no less than 50% of the zones' population The use of race in drawing Zones 5 and 6 was not narrowly tailored to any compelling interest. Plaintiffs request a declaratory judgment that the Enacted Plan is unconstitutional in violation of the Equal Protection Clause; a permanent injunction enjoining elections under it; a remedial decree that ensures Plaintiffs live and vote in constitutional districts that comply with all applicable legal requirements as soon as possible; and nominal damages of one dollar each. Plaintiffs also request reasonable attorneys' fees and costs.

City: Race did not predominate in the City's redistricting of Zones 5 and 6. The City balanced multiple traditional, race-neutral criteria—equal population (the dominant criterion), compactness, contiguity, adherence to natural and man-made boundaries, core preservation, and communities of interest—with race as only one consideration. Plaintiffs cannot overcome the presumption of legislative good faith. They rely on selectively quoted statements and offer no alternative map. Even if race predominated, the Enacted Plan satisfies strict scrutiny because the City had a strong basis in evidence for preserving the two existing majority-Black zones to avoid liability under Section 2 of the Voting Rights Act. Additionally, under the same-decision defense, given the City's shape and the concentration of its Black population, the City would have drawn substantially the same plan without regard to race, as 50,000 race-neutral simulated plans confirm. The City requests that judgment be entered in its favor and that Plaintiffs take nothing.

Supervisor of Elections: Pursuant to applicable Florida laws and regulations, including Section 101.001, Florida Statutes, the Supervisor of Elections is responsible for recommending to the board of county commissioners precincts for voting in the county. Each precinct shall be numbered and, as nearly as practicable, composed of contiguous and compact areas. The supervisor shall designate a polling place at a suitable location within each precinct. The Supervisor of Elections is not directly involved in Defendant, City of Daytona Beach's, operations including redistricting. The Supervisor of Election takes no position on the merits of the Plaintiff's claims or the Defendant's claims. Supervisor of Elections reserves the right to present facts and arguments regarding matters which will directly affect her operations including timing and/or feasibility of any remedies the court may order which may impact the administration of elections or impose affirmative duties on the Supervisor of Elections.

**(4) A list of each exhibit with a notation of each objection.**

The parties' exhibit lists are attached as **Attachments 1** and **2** and the joint exhibit list as **Attachment 3**.

**(5) A list of each witness by name.**[1]

| **Plaintiffs' Witnesses** | | |
|---|---|---|
| **Name** | **Likelihood of Testifying** | **Objections** |
| Nicholas Sakhnovsky | Will call | |
| Josephine Pope | May call | |
| Gabrielle Adekunle | May call | |
| Victor Valentin | May call | |

[1] Each side reserves the right to call and cross-examine any witnesses listed on the other side's witness list and any other rebuttal or impeachment witnesses.

| Defendants' Witnesses | | |
|---|---|---|
| **Name** | **Likelihood of Testifying** | **Objections** |
| Records custodians, as necessary | May call | |
| Plaintiffs' Witnesses | May call | |

**(6) A list of each expert witness.**

| Plaintiffs' Expert Witnesses | | |
|---|---|---|
| **Name** | **Substance of Testimony** | **Objections** |
| Bryant Moy, Ph.D. | Racially polarized voting in Daytona Beach; rebuttal of Dr. Trende's analysis | |
| Christopher Kenny, Ph.D. | Rebuttal of Dr. Trende's analysis | |
| **Defendants' Expert Witnesses** | | |
| **Name** | **Substance of Testimony** | **Objections** |
| Sean Trende, Ph.D. | Daytona Beach's geography and demographics; analysis of the Enacted Plan; race-neutral simulation analysis; and rebuttal of Dr. Moy's analysis | |

**(7) A breakdown of the type and amount of monetary damages.**

Each Plaintiff seeks one dollar in nominal damages.

**(8) A list of each deposition offered in lieu of live testimony.**

None.

**(9) A concise statement of each admitted fact.**

1. The Daytona Beach City Commission is made up of six commissioners each elected from a "zone" or district, and a mayor elected citywide.

2. Since the 2024 elections, the commissioners have been as follows:

| Zone | Commissioner | Last Election | Next Election |
|---|---|---|---|
| 1 | Monica Paris | 2022 | 2026 |
| 2 | Ken Strickland | 2024 | 2028 |
| 3 | Quanita May | 2022 | 2026 |
| 4 | Stacy Cantu | 2024 | 2028 |
| 5 | Dannette Henry | 2022 | 2026 |
| 6 | Paula Reed | 2024 | 2028 |
| Mayor Derrick Henry | | 2024 | 2028 |

3. Commission elections are held in August and November of even years.

4. Commissioners from Zones 1, 3, and 5 are elected in gubernatorial years. The mayor and commissioners from Zones 2, 4, 6 are elected in presidential years.

5. The Equal Protection Clause requires election districts to be substantially equal in population. *Avery v. Midland Cnty.*, 390 U.S. 474, 485–86 (1968). This is known as the "one person, one vote" doctrine.

6. The 2020 Census revealed that the existing Commission zones were unequal in population in violation of "one person, one vote." The City thus embarked on the redistricting process.

7. On July 5, 2023, the Commission adopted a redistricting plan as Ordinance 2023-268 (the "2023 Plan"). The 2023 Plan was implemented in the 2024 municipal elections.

8. Five city residents challenged the 2023 Plan in state court under Florida's Sunshine Law, Fla. Stat. § 286.011(1), and a state statute that prohibits cities from drawing districts with the intent to favor incumbents based on their home addresses, Fla. Stat. § 166.0321.

9. To resolve that suit, the City agreed in January 2025 to repeal the 2023

Plan and re-start the redistricting process.

10. The City repealed the 2023 Plan on January 8, 2025, reverting to the zone boundaries adopted under the 2010 Census (the "2012 Plan").

11. On April 2, 2025, the City hired Kurt Spitzer & Associates as its redistricting consultant for a new remapping process.

12. The Commission considered and discussed redistricting at a workshop on August 6, 2025, and during meetings on August 20, September 3, and October 1, 2025. Transcripts and video recordings of these meetings are on the parties' joint exhibit list.

13. At its October 1, 2025, meeting, the Commission adopted the Enacted Plan ("Alternative 1B-1") by a 6-0 vote, with Commissioner Reed absent.

14. Josephine Pope and Victor Valentin reside in City Commission Zone 6.

15. Gabrielle Adekunle resides in City Commission Zone 5.

**(10) A concise statement of each agreed principle of law.**

1. The Court has jurisdiction over the parties and this action.

2. Venue properly rests with this Court.

3. Racial gerrymandering claims involve "a two-step analysis." *Cooper v. Harris*, 581 U.S. 285, 291 (2017).

4. ***First***, plaintiffs must prove that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district," and "that the legislature subordinated traditional race-

neutral districting principles . . . to racial considerations," *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 187 (2017) (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)).

5. To meet their burden of proof, plaintiffs may rely on "'direct evidence' of legislative intent, 'circumstantial evidence of a district's shape and demographics,' or a mix of both." *Cooper v. Harris*, 581 U.S. 285, 291 (2017) (quoting *Miller*, 515 U.S. at 916).

6. ***Second***, "if racial considerations predominated over others, the design of the district must withstand strict scrutiny. The burden shifts to the government to prove that its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end." *Cooper*, 581 U.S. at 292. Compliance with Section 2 of the Voting Rights Act can "provide a compelling reason for race-based districting." *Louisiana v. Callais*, 146 S. Ct. 1131, 1143 (2026).

7. "[T]o meet the 'narrow tailoring' requirement," the government must prove it "had 'a strong basis in evidence' for concluding that the [VRA] required its action." *Cooper*, 581 U.S. at 292 (citation omitted). This requires a "functional analysis of the electoral behavior within the particular . . . district," *Bethune-Hill*, 580 U.S. at 194, and the record must support "a strong showing of a pre-enactment analysis with justifiable conclusions." *Abbott v. Perez*, 585 U.S. 579, 621 (2018). Put another way, the government must show that it had "good reasons" to think that it would transgress the VRA if it did not draw race-based district lines. *Cooper*, 581 U.S. at 293. That "strong

basis" or "good reasons" standard gives the government "breathing room" to adopt reasonable compliance measures that may prove, "in perfect hindsight, not to have been needed." *Id.*

8. To make out a Section 2 vote-dilution claim, a racial minority group must satisfy three preconditions: (1) the group "is sufficiently large and geographically compact to constitute a majority in a single-member district," (2) the group "is politically cohesive," and (3) the "majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986) (cleaned up).

9. If the minority group satisfies the *Gingles* preconditions, the group "must also show, under the 'totality of circumstances,' that the political process is not 'equally open' to minority voters." *Allen v. Milligan*, 599 U.S. 1, 18 (2023) (quoting *Gingles*, 478 U.S. at 45–46).

10. "If a State has good reason to think that all the '*Gingles* preconditions' are met, then so too it has good reason to believe that § 2 requires drawing a majority-minority district. But if not, then not." *Cooper*, 581 U.S. at 302 (citations omitted).

**(11) A concise statement of each issue of fact.**

1. Whether "race was the predominant factor in the design of" Zones 5 and 6. *Abbott*, 585 U.S. at 620.

2. The City raises an issue of fact: Whether the City would have made the same redistricting decision without regard to race. *Hunter v. Underwood*, 471 U.S. 222,

228 (1985).[2]

**(12) A concise statement of each issue of law.**

Whether, if the Court finds that race was the predominant factor in the design of either Zone 5 or 6, the use of race in the design of the district was narrowly tailored to a compelling interest.

**(13) A list of each pending motion or other unresolved issue.**

Plaintiffs' Motion for Partial Summary Judgment (ECF No. 58)

**(14) A statement of the usefulness of further settlement discussions.**

The parties agree that further settlement discussions would not be useful.

**(15) The signatures of trial counsel and certification.**

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.

Respectfully submitted October 20, 2026,


*/s/ Nicholas L.V. Warren*
Nicholas L.V. Warren (FBN 1019018)
Caroline A. McNamara (FBN 1038312)
Nastassia Janvier (FBN 1072670)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
cmcnamara@aclufl.org

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil (FBN 72556)
Valerie L. Chartier-Hogancamp (FBN 1011269)
Randall M. Raban (FBN 1055100)
**Holtzman Vogel Baran Torchinsky & Josefiak PLLC**
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com


[2] Plaintiffs do not agree that this is a relevant issue.

njanvier@aclufl.org
dtilley@aclufl.org

*Counsel for Plaintiffs*

vhogancamp@holtzmanvogel.com
rraban@holtzmanvogel.com

*Counsel for the City of Daytona Beach*

*/s/ Sebrina L. Slack*
William K. Bledsoe (FBN 029769)
Sebrina L. Slack (FBN 0392715)
**Volusia County Attorney's Office**
123 West Indiana Avenue
DeLand, Florida 32720
(386) 736-5950
kbledsoe@volusia.org
sslack@volusia.org

*Counsel for Volusia County Supervisor of Elections*