**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

VOTE!, *et al.*,

*Plaintiffs*,

v. Case No. 6:25-cv-1980-PGB-RMN

CITY OF DAYTONA BEACH, *et al.*,

*Defendants*.
_________________________________/

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

The City fails to undermine Plaintiffs' entitlement to partial summary judgment on the issue of strict scrutiny. The Response (ECF No. 67) misses the mark in two main ways.

***First***, the City argues that the Court should deny Plaintiffs' motion because it "puts the cart before the horse" and does not ask the Court to decide the "threshold issue" of racial predominance. Response at 1, 4. But this ignores that a party may seek summary judgment on only a "part of [a] claim or defense". FRCP 56(a).[1] Thus, a plaintiff may be granted partial summary judgment on just one element of its prima facie case. *E.g., Alper Auto., Inc. v. Day to Day Imports, Inc.*, No. 18-cv-81753, 2020 WL 5514414, at *4 (S.D. Fla. July 13, 2020). Similarly, "[a] court may grant partial summary judgment on affirmative defenses, so long as the movant meets its burden of

[1] The advisory committee's note explains that the 2010 amendments to Rule 56(a) "make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense."

showing that the defenses cannot be maintained by a preponderance of the evidence." *FDIC for Superior Bank v. Hall*, No. 8:14-cv-834-T-24 TGW, 2016 WL 7325590, at *2 (M.D. Fla. Aug. 29, 2016). This is so even though a plaintiff's prima facie case and a defendant's affirmative defenses are "a sequential two-step process," Response at 4, just like the two steps of a racial gerrymandering claim.

Since the government's burden on strict scrutiny "is in fact very much akin to an affirmative defense," it makes sense that a party may be entitled to partial summary judgment on that issue. *Johnson v. Mortham*, 915 F. Supp. 1574, 1579 (N.D. Fla. 1996) (racial gerrymandering case); *see also Walen v. Burgum*, 700 F. Supp. 3d 759, 775 (D.N.D. 2023), *aff'd in relevant part, appeal dismissed in part*, 145 S. Ct. 1041 (2025) (mem.). Partial summary judgment on the issue of strict scrutiny therefore "serves as a useful tool to streamline litigation" and narrow the issues, witnesses, and arguments for trial. *SEC v. Bankatlantic Bancorp, Inc.*, 661 F. App'x 629, 630 (11th Cir. 2016).

***Second***, the City fails to raise a genuine dispute of material fact as to whether the City "ha[d] good reasons to think that all the '*Gingles* preconditions' [were] met," *Cooper v. Harris*, 581 U.S. 285, 302 (2017), or put differently, a "strong basis in evidence for finding that the threshold [*Gingles*] conditions are present," *Bush v. Vera*, 517 U.S. 952, 978 (1996) (plurality opinion); *accord Wis. Leg. v. Wis. Elec. Comm'n*, 595 U.S. 398, 402–04 (2022). In particular, there is no dispute that the City lacked a "strong basis in evidence" for the third *Gingles* precondition—"that white bloc voting <u>regularly causes</u> the candidate preferred by black voters to lose[.]" *Wright v. Sumter Cnty. Bd. of Elecs. &*

*Registration*, 979 F.3d 1282, 1304 (11th Cir. 2020) (emphasis in original).

The purported factual dispute the City asserts proves illusory upon inspection. The City claims that the legislative record "repeatedly addressed the functional effect of black voting-age population levels in specific districts, reflecting some assessment of black political cohesion and white bloc voting against the black candidate of choice." Response at 7–8. The City's first record citation for this assertion—a full transcript page from the Commission's August 6, 2025 workshop—contains no discussion of the third *Gingles* precondition whatsoever, only the city attorney's assertion that Zones 5 and 6 have historically been majority-Black zones which have elected Black candidates. ECF No. 58-3 at 16. The City's second record citation—two full pages from the Commission's September 3, 2025 meeting—likewise contains a discussion of how Zones 5 and 6 "have consistently elected minority commissioners" but no discussion whatsoever of white bloc voting or whether that bloc voting is sufficient to usually defeat Black voters' choices absent remedial districting. ECF No. 58-5 at 11–12.

The City attempt to equate these brief and conclusory discussions *about the fact that Zones 5 and 6 are majority-Black and have elected Black commissioners* with the detailed historical testimony *about what level of Black population is necessary to elect Black-preferred candidates* deemed sufficient to satisfy strict scrutiny on remand in *Alabama Legislative Black Caucus v. Alabama* (*ALBC*), 231 F. Supp. 3d 1026, 1033 (M.D. Ala. 2017) ("The statement of Senator Hank Sanders in particular is detailed and based on his experience as an influential longtime incumbent."). Response at 8. In *ALBC*, all parties

agreed that Section 5 of the Voting Rights Act "required Alabama at least to maintain the overall number of majority-black districts" and that any necessary preconditions for VRA liability were present in Alabama. 231 F. Supp. 3d at 1061. The parties disputed whether Alabama had a strong basis in evidence for setting the *particular Black population percentages* in those VRA-protected districts. *Id.* at 1061–64. Recognizing the Supreme Court's admonition that courts "cannot insist that a state legislature, when redistricting, determine *precisely* what percent minority population § 5 demands," the district court on remand found some of Alabama's chosen population percentages were narrowly tailored due to the detailed, reasoned, and well-supported statements of two longtime Black legislators that those percentages were necessary to avoid illegal retrogression in some districts. *Id.* at 1062–64, 1082, 1106–09, 1140, 1158, 1185, 1192, 1204, 1241–44 (quoting *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 278 (2015) (emphasis in original)).

Here, in contrast, the issue is not what Black population percentage is needed to afford Black voters the ability to elect preferred candidates that the VRA requires. The issue is whether Daytona Beach had a strong basis in evidence for believing the VRA required drawing districts that protected Black ability-to-elect at all. Nothing in the legislative record suggests that Daytona Beach understood white bloc voting to be a necessary precondition for deliberately drawing two majority-Black zones. The three transcript pages the City cites come nowhere close to presenting "detailed" statements about white bloc voting "based on [lawmakers'] experience." *Compare id.* at 1033 (further supporting reliance on legislators' statements because "the record does not

establish that the drafters had an incorrect understanding of section 5 in these two districts") *with Wis. Leg.*, 595 U.S. at 403 (rejecting "uncritical majority-minority district maximization" and belief "that the VRA *might* support race-based districting" as insufficient to satisfy strict scrutiny for Section 2) (emphasis in original)).

The City's only other attempt to inject a factual dispute are mere quibbles with Dr. Moy's analysis contained in the "few lines" the City's expert Dr. Trende dedicates to Moy. Response at 8–9; ECF No. 35-1 (Trende Rep.) at 36.[2] Even if you accept all of the City's critiques of Moy's analysis, the conclusion is still the same: there is no strong basis in evidence for the third *Gingles* precondition in Daytona Beach. Trende's critiques of Moy's methods—his unexplained assertion that "ecological inference is the more modernized technique" and his statement that Moy drew inferences from too few precincts[3]—amount to nothing. Neither methodological choice makes a difference to Moy's ultimate conclusion that Black voters are cohesive, which Trende himself says he *agrees* with. Trende Rep. at 33. The City's main criticism is that looking at just recent elections (an arbitrary selection of 11 contests since 2022), the Black-preferred candidates won 6 of them. But as Moy points out in his rebuttal to Trende, Moy "does not rely on a single cycle," instead "evaluat[ing] the full set of elections

[2] Plaintiffs cite to the ECF pagination.

[3] Moy studied 31 elections, yet *only one* represented "as few as three precincts," which is Trende's critique on this point. Moy Rep. at 11. Moy examined one other City Commission contest with four precincts. *Id.* at 24. Flipping through the precinct scatterplots in Moy's report confirms the triviality of Trende's critique: the 29 other elections represent many more precincts, *id.* at 3–33, including the City's 2016 and 2020 Mayoral elections, *id.* at 20, 33. Of these 29 contests, white bloc voting was still insufficient to defeat the Black-preferred candidate in the overwhelming majority of races.

from 2016 through 2025[.]" ECF No. 37-4 (Moy Rebuttal) at 2–3.[4] Regardless, even using Trende's 2022–25 subset, the Black-preferred candidate *prevailed* in the majority of elections—the opposite of "white bloc voting [that] regularly causes the candidate preferred by black voters to lose[.]" *Wright*, 979 F.3d at 1304.

* * *

There is no genuine dispute of fact: the City had no "good reason" or "strong basis in evidence" to think the third *Gingles* precondition was met. That is dispositive of the strict scrutiny prong of this case. *Cooper*, 581 U.S. at 302. The Court should grant partial summary judgment for Plaintiffs on the issue of strict scrutiny.

Respectfully submitted October 28, 2026,

*/s/ Nicholas L.V. Warren*
Nicholas L.V. Warren (FBN 1019018)
Caroline A. McNamara (FBN 1038312)
Nastassia Janvier (FBN 1072670)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
cmcnamara@aclufl.org
njanvier@aclufl.org
dtilley@aclufl.org

*Counsel for Plaintiffs*

[4] Moy's three-page Rebuttal Report (ECF No. 37-4) sufficiently marginalizes Trende's analysis regarding the City's narrow tailoring of their use of race in drawing the challenged districts.