**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**VOTE!, JOSEPHINE POPE, GABRIELLE ADEKUNLE and VICTOR VALENTIN,**

**Plaintiffs,**

**v.** **Case No: 6:25-cv-01980-PGB-RMN**

**CITY OF DAYTONA BEACH and LISA LEWIS,**

**Defendants.**
_____________________________/

**ORDER**

This cause is before the Court on Plaintiffs' Vote!, Josephine Pope, Gabrielle Adekunle, and Victor Valentin ("**Plaintiffs**") Motion for Partial Summary Judgment (Doc. 58 (the "**Motion**")). The City of Daytona Beach (the "**City**") filed a Response in Opposition (Doc. 67), and Plaintiffs filed a Reply (Doc. 70). For the reasons explained below, the Motion is denied.

## I. BACKGROUND

Plaintiffs challenge the City's 2025 redistricting of City Commission Zones 5 and 6 as an unconstitutional racial gerrymander. (*See generally* Doc. 58). Their Motion presents a limited question: assuming that race predominated in drawing the challenged districts, can the City justify that use of race as narrowly tailored to compliance with Section 2 of the Voting Rights Act? (*Id.* at p. 1). Plaintiffs do not request summary judgment on racial predominance. (*Id.* at p. 3; Doc. 70, pp. 1–2).

The Defendants dispute predominance and maintain that it balanced equal population, compactness, contiguity, existing boundaries, communities of interest, and the avoidance of minority vote dilution. (Doc. 67, p. 2). Its expert, Dr. Sean Trende, also relies on race-neutral simulations. (*Id.* at pp. 2–3). Those matters remain relevant to the question of whether race predominated. The present Motion instead addresses the sufficiency of the City's asserted Voting Rights Act justification if Plaintiffs establish predominance. (*See* Doc. 58).

## II. STANDARD OF REVIEW

A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. FED. R. CIV. P. 56(c)(1)(A). Alternatively, the movant may meet its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

"The court need consider only the cited materials" when resolving a motion for summary judgment. FED. R. CIV. P. 56(c)(3); *see also HRCC, Ltd. v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs and the arguments raised therein).[1]

The allocation of the trial burden matters. If Plaintiffs establish racial predominance, the City bears the burden of satisfying strict scrutiny. *See Cooper v. Harris*, 581 U.S. 285, 292 (2017). On that issue, Plaintiffs may discharge their initial Rule 56 burden by identifying an absence of evidence sufficient to support the City's justification. The City must then identify specific evidence permitting a finding in its favor; Plaintiffs need not disprove every conceivable justification. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986); *see also* FED. R. CIV. P.

[1] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

56(c)(1)(B). A disagreement between experts does not necessarily preclude summary judgment. The disagreement must concern a fact material to the issue presented.

## III. DISCUSSION

### A. Whether Predominance Must First Be Decided

Defendants contend that Plaintiffs' request that the Court assume, without deciding, that race predominated puts the cart before the horse. (Doc. 67, p. 4). That is, a racial-gerrymandering claim ordinarily proceeds in two steps. *Cooper*, 581 U.S. at 291–92. Plaintiffs first must prove that race predominated over traditional districting considerations. *Id.* at 291. If they carry this burden, the City must show that its race-based districting was narrowly tailored to a compelling governmental interest. *Id.* at 292. "[T]he narrow tailoring requirement insists only that the legislature have a strong basis in evidence in support of the (race-based) choice that it has made." *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 193 (2017) (quoting *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 278 (2015)). The City contends that "[t]he Court cannot decide step two if it does not know what 'choice' the City purportedly made at step one." (Doc. 67, p. 5). The Plaintiffs counter that this substantive allocation of burdens does not prohibit partial summary judgment on the second issue while reserving the first for trial. (Doc. 58, pp. 2–3). The Court disagrees and finds that Rule 56(a) permits a party to seek summary judgment on only a part of a claim or defense. *Walen v. Burgum*, 700 F. Supp. 3d 759, 775 (D.N.D. 2023) (assuming, without deciding, that race

predominated in drawing the challenged legislative subdistricts, despite a genuine factual dispute on that issue).

### B. The *Gingles* Preconditions

Even assuming that race predominated in drawing of Daytona Beach City Commission Zones 5 and 6, a material issue of fact remains as to the third *Gingles* precondition. *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986) (cleaned up). To make out a Section 2 vote-dilution claim, a racial minority group must satisfy three preconditions: (1) the group "is sufficiently large and geographically compact to constitute a majority in a single-member district," (2) the group "is politically cohesive," and (3) the "majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Id.* If the minority group satisfies the *Gingles* preconditions, the group "must also show, under the 'totality of circumstances,' that the political process is not 'equally open' to minority voters." *Allen v. Milligan*, 599 U.S. 1, 18 (2023) (quoting *Gingles*, 478 U.S. at 45–46). "If a State has good reason to think that all the '*Gingles* preconditions' are met, then so too it has good reason to believe that § 2 requires drawing a majority minority district. But if not, then not." *Cooper*, 581 U.S. at 302 (citations omitted). To establish narrow tailoring on that basis, the City must have had a strong basis in evidence, or good reasons, to believe the statute required its race-based action. *Id.* at 292–93, 301–02. A general desire to preserve majority-Black

districts does not, by itself, supply that showing. *See Wis. Legislature v. Wis. Elections Comm'n*, 595 U.S. 398, 402–04 (2022) (per curiam).

The dispositive issue is the third *Gingles* precondition. The Plaintiffs contend that "the third Gingles precondition—white bloc voting—is absent in Daytona Beach." (Doc. 58, p. 4). They rely on their expert, political scientist Dr. Bryant Moy ("**Dr. Moy**"), who examined past election data and concluded that voting was racially polarized between black and white voters in 25 contests and that the black-preferred candidate won in Daytona Beach in 18 of those races (*Id.* at pp. 4–5 (quoting Doc. 58-7, p. 1)). However, success in an existing majority-Black district does not, by itself, disprove the need for a protected district. Such success may reflect the operation of an effective remedial district. Moreover, the Defendants dispute Dr. Moy's use of ecological regression rather than ecological inference and his reliance on data from three precincts. (Doc. 67, p. 8 (quoting Doc. 35-1 at pp. 36–37)).

The City invokes Dr. Trende's methodological criticisms and his narrower set of eleven contests beginning in 2022, in six of which the Black-preferred candidate prevailed. (Doc. 35-1, pp. 36–37; Doc. 70, pp. 5–6). The Court does not conclude that six victories in eleven contests establish the third *Gingles* precondition, nor that the historical existence of majority-Black districts alone justifies maintaining a particular racial percentage. Likewise, later expert analysis does not substitute for the information available to the Commission when it acted. The point is narrower: the City has identified specific competing evidence, and

Plaintiffs have not established that their characterization of local voting patterns and the City's compliance basis is undisputed.

The issues of material fact over whether the third *Gingles* precondition is satisfied preclude summary judgment.

## IV. CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment (Doc. 58) is **DENIED** on the issue of the City's asserted Section 2 justification.

**DONE AND ORDERED** in Orlando, Florida on November 5, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record